James M. THOMAS, Appellant,

v.

HOLLISTER, INC., Respondent.

No. WD 56328.

Missouri Court of Appeals,
Western District.

Aug. 17, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 23, 1999.

Application for Transfer Sustained
Jan. 25, 2000.

Case Retransferred May 30, 2000.

Court of Appeals Opinion Readopted
June 1, 2000.

John Jay Benson, Kirksville, for appellant.

Susan Ford Robertson, Daniel K. Atwill, Columbia, for respondent.

Before SPINDEN, P.J., EDWIN H. SMITH and RIEDERER, JJ.

ALBERT A. RIEDERER, Judge.

Appellant James M. Thomas appeals from a final award issued by the Labor and Industrial Relations Commission denying him workers' compensation benefits for an injury he sustained on the parking lot of his employer. Because we find that the injuries in this case were incurred on the employer's premises, along the accepted route to work, the injuries arose out of and in the course of employment. The decision of the Commission is reversed and the award of the ALJ is reinstated.

**Factual and Procedural Background**

On November 2, 1990, Appellant, an employee of Respondent Hollister Inc., drove to work and parked his 1983 Chevrolet Blazer in a parking lot owned by Respondent. The parking lot was regularly used by employees of Respondent to park their vehicles while at work. Appellant parked his vehicle and attempted to exit it. He next remembers getting up from the parking lot pavement experiencing a sharp pain in the back of the left side of his head. Appellant lost consciousness for an unknown period of time. He also experienced pain in his ribs and left shoulder. Appellant walked into the plant where his wife and other coworkers were present and then went to the emergency room where he received eight stitches to close the wound on the back of his head.

Appellant made a claim under Chapter 287—Workers' Compensation Law. Respondent's report of the injury indicates: "Employee was getting out of truck in parking lot and foot slipped on running board and he fell and hit his head and injured ribs." The emergency room records from the day he fell stated that Appellant had complained of a "fall" or "falling off step." Other medical records and doctor depositions indicated that Appellant slipped or fell off a running board on his vehicle. A hearing was held before an administrative law judge on April 10, 1997 and July 17, 1997. At the hearing, Appellant testified that he could not remember how he was injured. The following colloquy took place:

Q: So as you got out of the vehicle did you use the running board ?

A: No.

Q: And what did you do ?

A: Well, the next thing I remember was getting up off the ground and seeing blood. Now as far as that I don't remember anything until I got ready to go in the building.

Q: Now is it fair to say that you don't know why you fell today ? Is that what your telling the judge ?

A: No, I don't know. I remember getting out of the truck but then other than that I don't know what happened.

Q: The last thing you remember is getting out of the truck. Is that what your telling the judge today ?

A: (Witness nodded; no verbal response)

Appellant also testified that in a March 1996 deposition, he said that he "stepped out on the running board ... my foot slipped and that's when all of this come about." Appellant also testified that he had problems with his memory, that there were no curbs or obstructions where he parked that day and there was no ice, snow or rain at the time of the incident.

On December 28, 1990, Appellant had a seizure while at work. He went into convulsions and lost consciousness. This was his first seizure ever. He was taken to the hospital by ambulance. Appellant had another seizure at home on January 15, 1991, resulting in a hospital admission. After the first seizure, Appellant did not return to work until April 15, 1991, and on January 17, 1992, Appellant had another seizure at work. Again, he was taken to the hospital by ambulance. Appellant did not return to work after this seizure. Respondent does not dispute that the seizures

Appellant suffers from are a result of his fall.

On September 16, 1997, the ALJ issued findings of fact and rulings of law, in which he found that Appellant's injury arose out of and in the course of Appellant's employment. Appellant was found to be permanently and totally disabled. The ALJ ordered: 1) Respondent to pay Appellant $320.97 per week from December 29, 1990, through April 14, 1991, and from January 18, 1992, for the rest of his life; 2) The employer-insurer to pay Appellant $24,-870.88 for past medical treatment; 3) Appellant to be awarded "such medical treatment and medicines as may be reasonable and necessary to cure and relieve [Appellant's] seizure disorder for the remainder of his life;" 4) Appellant to be awarded $1,260.00 for mileage; and 5) Respondent to be credited $16,956.76 for compensation already paid to Appellant.

On October 3, 1997, Respondent filed an application for review with the Labor and Industrial Relations Commission ("Commission"). On August 12, 1998, the Commission entered a final award denying compensation, reversing the decision of the ALJ. This appeal ensued.

### Standard of Review

The standard of review in a workers' compensation case is set out in § 287.495.1,[1] which states in pertinent part:

> The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: (1) That the commission acted without or in excess of its powers; (2) That the award was procured by fraud; (3) That the facts found by the commission do not support the award; (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

In this endeavor, we are not bound by the Commission's conclusions of law or its application of law to the facts. *Division of Employment Sec. v. Taney County Dist. R–III*, 922 S.W.2d 391, 393 (Mo. banc 1996). We do not defer to the Commission on decisions that are interpretations or applications of law rather than determinations of fact. *West v. Posten Constr. Co.*, 804 S.W.2d 743, 744 (Mo. banc 1991). We are, however, bound by the Commission's finding of fact. *Abel v. Mike Russell's Standard Service*, 924 S.W.2d 502, 503 (Mo. banc 1996). But when the facts are not in dispute, the question of whether an accident arises out of and in the course of employment is a question of law requiring a *de novo* review. *Knipp v. Nordyne, Inc.*, 969 S.W.2d 236, 238 (Mo. App.1998).

### Discussion

All the provisions of the workers' compensation law "shall be liberally construed with a view to the public welfare." Section 287.800. This requires that all doubts in workers' compensation proceedings be resolved in favor of the employee. *State ex rel. Lakeman v. Siedlik*, 872 S.W.2d 503, 505 (Mo.App.1994). This policy furthers the purpose of enabling claimants to receive compensation. *Sanders v. St. Clair Corp.*, 943 S.W.2d 12, 17 (Mo. App.1997). From its very inception, the workers' compensation statute was intended to compensate work-related injury, liberally construed, for workers gave up, in exchange, the right to pursue common law suits.

At the outset we note, that although the parties have argued about the 1993 amendment to Section 287.020, it is not applicable to this case, because the accident occurred in 1990. *Avery v. City of Columbia*, 966 S.W.2d 315, 321 (Mo.App.1998). Thus, cases construing the 1993 amendment are also not applicable here.

The Commission's Final Award Denying Compensation stated:

1. All statutory references are to RSMo 1994, unless otherwise indicated.

We find that it makes no difference whether the claimant slipped on the running board of his vehicle and fell or whether the fall in the parking lot [sic] for a reason he can not explain. In either event the claim is not compensable.

. . .

As in *Finley,* if the claimant fell after slipping on the running board of his vehicle, the injury was not caused by a peculiarity of the employer's premises. The risk was no greater than that experienced by members of the general public and the injury has no causal connection with employment.

The injury also is not compensable if it occurred after exiting the vehicle. An accident arises out of the employment relationship only "when there is a [causal] connection between the conditions under which the work is required to be performed and the resulting injury." *Kloppenburg v. Queen Size Shoes, Inc.,* 704 S.W.2d 234, 236 (Mo. banc 1986) (citations omitted). In *Abel v. Mike Russell's Standard Service,* 924 S.W.2d 502, 503 (Mo. banc 1996), the Supreme Court further refined the requirements of the "arising out of" test: "The condition of the workplace bears a causal connection to the injury only when the condition is unique to the workplace or is a common condition that is exacerbated by the requirements of employment." *Abel* at 504.

. . .

As in the *Abel* case, [Appellant] failed to establish that anything about his duties or the workplace caused his injury.

. . .

He has not shown that a condition unique to or exacerbated by the workplace existed and contributed to cause his injury.

In other words, the Commission did not find as a fact: (1) that the claimant slipped on the running board, nor did it find as a fact, (2) that the claimant fell on the parking lot. Rather, it applied the law to both fact situations. In either case, it was error for the Commission to deny Appellant workers' compensation benefits.

The Commission relied on *Finley v. St. Louis Smelting & Refining Co.,* 361 Mo. 142, 233 S.W.2d 725 (1950) in its decision, noting "A case with similar facts is Finley . . . in which the Missouri Supreme Court reversed an award of compensation." However, *Finley* does not require reversal of the award of compensation in the case at bar. In *Finley,* the injured employee was leaving work and started his car, which was parked on the employer owned parking lot, ". . . but the fan was stuck. He raised the hood and gave the fan a whirl with his hand. It started and caught his hand, cutting off his left index finger and a part of his left ring finger." *Id.* at 726. After noting that the sole question before them was whether the facts in their case came within the phrase, "arising out of . . . his employment," and that the courts of this state and many other states had construed the phrase, the court in *Finley* stated that no all embracing definition had yet been found. *Id.* Every case involving the phrase "arising out of employment" should be decided upon its own particular facts and circumstances and not by reference to some formula. *Id.* (citing, *Leilich v. Chevrolet Motor Co.,* 328 Mo. 112, 40 S.W.2d 601, 605 (1931)). The *Finley* court noted that some cases have granted no compensation even though the employee was at the place of employment, while other cases have granted compensation even though the employee was not engaged in the work of the employer or in any work at all. The court reasoned: "Those cases are not necessarily inconsistent." *Id.*

The court also noted:

Compensation to an injured employee would depend upon whether his activi-

ties should have been reasonably anticipated and expected by the employer and had become an incident to the employment. (citation omitted).

*Id.* at 727. Applying the reasoning of *Finley* to the case at bar would require the Commission to affirm the decision of the ALJ, for under the particular circumstances of this case, the injury arose from activities the employer reasonably expected and that had become an incident to the employment. The employer provided a parking lot, where, it was expected, the employee would park. Getting out of his car in that parking lot had become an incident to his employment.

■ The *Finley* court was concerned about the cause of the injury. The court distinguished three cases in which compensation was awarded, by stating that Finley's "injury was caused by his own automobile over which the company had no control." *Id.* at 728. It distinguished another case that awarded compensation by noting that "In the case at bar, the respondent was injured by a defect in his own car." *Id.* The court also speaks of "causative agents." *Id.* If we apply the foregoing principles to the case at bar, the award of the ALJ would be sustained. Appellant's injury was not caused by a defect in his car. Nor was the injury caused by the employee's car. Rather, the activities of the injured employee "should have been reasonably anticipated and expected by the employer and had become an incident to the employment." *Id.* at 727. Specifically, the employee was getting out of his car on the employer's parking lot, which was the usual and customary and expected activity of the employee in arriving at work. There was no intervening cause. Every case "should be decided upon its own particular facts and circumstances and not by reference to some formula." *Id.* at 726. And "if the facts in this record show that by the conduct of the parties the activity in which [Appellant] was engaged at the time of the injury had become an incident to his employment, then he is entitled to compensation." *Id.* Here, Respondent provided a private parking lot where employees were expected to park their vehicles in while at work. It is reasonable to expect that Appellant would exit his vehicle to proceed to work. By the conduct of the parties, it is apparent that this activity on the employer's parking lot had become incident to his employment, and the employee is "entitled to compensation." *Id.*

Furthermore, the Commission's reliance on *Abel*, 924 S.W.2d 502, is misplaced. *Abel* should not be read as authority to deny compensation in this case. First, the issue of whether an injury "arises out of" employment, must be decided on a case by case basis according to the facts of each case. *Finley*, 233 S.W.2d at 726. Whereas *Abel* is an idiopathic fall case, the record here contains no evidence that this is an idiopathic fall case. In vigorous dissent, Justice Blackmar claims *Abel* "is out of line with the controlling cases." *Abel*, 924 S.W.2d at 506. Joined by two justices, Blackmar noted that *Abel* "fails to discuss the recent controlling decision of this court." *Id.* Other case law indicates the reasoning of *Abel* is not controlling here. Just two months before *Abel* was decided, the Court decided *Cox v. Tyson*, 920 S.W.2d 534 (Mo. banc 1996). *Cox* was a unanimous decision, with facts similar to our case.

■ In *Cox*, an employee slipped on ice and injured his back while returning from a trip to a convenience store during his paid break. The employee was walking along the usual and customary route from the parking lot to the plant where he worked when he fell. The court in *Cox* stated that generally, accidents occurring on the journey to or from work are not deemed to arise out of and in the course of employment. *Id.* at 535. An exception to this going to and coming from work rule allows recovery of worker's compensation benefits if:

(a) the injury-producing accident occurs on premises which are owned or controlled by the employer, or on premises

which are not actually owned or controlled by the employer but which have been so appropriated by the employer or so situate, designed and used by the employer and his employees incidental to their work as to make them, for all practical intents and purposes, a part and parcel of the employer's premises and operation; and

(b) if that portion of such premises is a part of the customary, expressly or impliedly approved, permitted, usual and acceptable route or means employed by workmen to get to and depart from their places of labor and is being used for such purpose at the time of the inquiry.

*Id.* (citing, *Kunce v. Junge Baking Co.,* 432 S.W.2d 602, 607 (Mo.App.1968)). "Injuries incurred on employer's premises along the accepted route to or from work arise out of and in the course of employment just as much as do injuries occurring during the performance of work." *Id.* (citing, *State ex rel. McDonnell Douglas Corp. v. Luten,* 679 S.W.2d 278, 280 (Mo. banc 1984)).

A month after *Abel,* the Eastern District decided *Frye v. Viacom,* 927 S.W.2d 545 (Mo.App.1996) wherein the court reversed the Commission's finding of no compensation in a case similar to *Cox* and to our case, and the Supreme Court denied transfer. In *Frye,* an employee fell when he stepped on a grating in the sidewalk that was covered with ice. The Eastern District determined that *Frye* was controlled by the Missouri Supreme Court's decision in *Cox,* which was rendered subsequent to the oral arguments in *Frye.* 927 S.W.2d 545 at 548. *Frye* was decided immediately after *Abel,* and the Supreme Court denied transfer.

The Commission should have been guided by the Supreme Court cases of *Kunce* and *Cox.* We find that under *Kunce* and *Cox,* the facts as found by the Commission do not support the denial of compensation to Appellant.

Under *Cox,* we must first determine whether "the injury-producing accident occurred on premises which are owned or

controlled by the employer, ... designed and used by the employer and his employees incidental to their work as to make them, for all practical intents and purposes, a part and parcel of the employer's premises and operation." *Cox,* 920 S.W.2d at 535–36. Here, both parties agree that Appellant's accident occurred in a parking lot owned and controlled by Respondent, and that parking in the lot was incidental to their employment with Respondent. Second, we must determine "if that portion of such premises is a part of the customary, expressly or impliedly approved, permitted, usual and acceptable route or means employed by workmen to get to and depart from their places of labor and is being used for such purpose at the time of the inquiry." *Id.* Both parties agree that the parking lot was the customary, approved, permitted, usual and acceptable route or means used by employees to get to and depart from work. Appellant was using the parking lot for the purpose of going to work when the accident occurred. This analysis yields the same result whether the Appellant slipped on the running board or slipped on the parking lot, and should result in affirming the award of the ALJ.

### Conclusion

Each case must be decided on its own particular facts. *Kunce,* 432 S.W.2d at 607; *Finley,* 233 S.W.2d at 726. And "[e]ach case has turned upon the point of whether, under its particular circumstances, the injury arose from something which had become an incident to the employment." *Finley,* 233 S.W.2d at 726 (citing, *Wamhoff v. Wagner Electric Corp.,* 354 Mo. 711, 190 S.W.2d 915, 917 (Mo. banc 1945)). In the case at bar, the Commission found that "The claimant parked his car and attempted to exit it." Employees coming to work are permitted recovery of workers' compensation benefits provided (a) the injury producing accident occurs on the premises which are owned or controlled by the employer, and (b) if that

portion of the premises is a part of the customary, permitted, usual and acceptable route or means used by the employees to get to and depart from their places of work. *Cox,* 920 S.W.2d at 534–35; *Kunce,* 432 S.W.2d at 607. Both parties agree that both of these conditions are met in the case at bar. Injuries incurred on an employer's premises along the accepted route to or from work arise out of and in the course of employment just as much as do injuries occurring during the performance of work. *Cox,* 920 S.W.2d at .535. Here, the injuries were incurred on the employer's premises, along the accepted route to work. Therefore, the injuries arose out of and in the course of employment.

The decision of the Commission is reversed and the award of the ALJ is reinstated.

All concur.