

# In the Missouri Court of Appeals
## Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| DAVID WRIGHT, | ) | ED102892 |
| | ) | |
| Respondent, | ) | Appeal from the Labor and |
| | ) | Industrial Relations Commission |
| v. | ) | |
| | ) | 11-110863 |
| TREASURER OF MISSOURI AS | ) | Labor and Industrial |
| CUSTODIAN OF SECOND INJURY | ) | Relations Commission |
| FUND, | ) | |
| | ) | |
| Appellant. | ) | Filed: November 10, 2015 |

<u>Introduction</u>

The Treasurer of the State of Missouri as Custodian of the Second Injury Fund (SIF) appeals the final award of the Labor and Industrial Relations Commission (Commission) awarding permanent total disability benefits to David Wright (Claimant). The SIF argues that the Commission erred in concluding Claimant met his burden to show that his injury arose out of and in the course of his employment, as defined by Section 287.020.3(2), RSMo. (Supp. 2005). We affirm.

<u>Background</u>

On July 21, 2011, Claimant was an employee of Roto-Rooter Services Company (Employer). On that day, Claimant was sitting on a chair in Employer's lunchroom,

eating his lunch, when the chair collapsed under him. Claimant fell to the floor and injured his low back. After that, Claimant developed intense pain in his low back and down his right leg.

Claimant filed a claim for workers' compensation, including a claim against the SIF. Claimant reached a settlement with Employer. An Administrative Law Judge (ALJ) adjudicated Claimant's remaining claim against the SIF.

After a hearing before the ALJ, the ALJ determined that Claimant had met his burden under Section 287.020.3(2)[1] to show that the accident was the prevailing factor in causing Claimant's injury and that it did not come from a hazard or risk unrelated to the employment to which he would have been equally exposed to outside of and unrelated to the employment in normal nonemployment life. The ALJ also found Claimant to be permanently and totally disabled, and that he was entitled to benefits from the SIF for his lifetime.

The SIF appealed, and the Commission affirmed with a supplemental opinion. The Commission identified the risk source that caused Claimant's injury as the collapse of the particular chair belonging to Employer. The Commission determined that Claimant was not equally exposed to the risk of that particular chair collapsing in his normal nonemployment life, and thus the Commission found Claimant's injury was causally connected to Claimant's work activity. The Commission also concluded that Claimant did not have to prove he was working at the time of his accident, based on the legislature's preservation of a limited extension of the premises doctrine, which permits recovery in limited circumstances when an employee is going to and from work. The

---

[1] All statutory references are to RSMo. (Supp. 2005), containing the 2005 amendments to the Workers' Compensation Law, unless otherwise indicated.

2

Commission reasoned that to allow recovery where an employee is injured on the employer's property while going to and from lunch, but to disallow it when the employee is injured on the employer's property *during* lunch would be to "carve out artificial islands of non-compensability at the workplace, which islands have indistinct geographic and temporal boundaries." The Commission found this approach impractical, inconsistent with the purposes of Workers' Compensation Law, and unsupported by the statutory language. The Commission concluded that Claimant had met his burden in all other respects and affirmed the ALJ's award of benefits. This appeal follows.

## Standard of Review

In reviewing a decision by the Commission, we review the findings of the Commission and not those of the ALJ. Roberts v. City of St. Louis, 254 S.W.3d 280, 283 (Mo. App. E.D. 2008). An appellate court shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award only if: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant making the award. Section 287.495, RSMo (2000). "[I]n the absence of fraud, the findings of fact made by the [C]ommission within its powers shall be conclusive and binding." Id.

We examine the whole record to determine whether there is sufficient competent and substantial evidence to support the award, or whether the award is contrary to the overwhelming weight of the evidence. Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 222-23 (Mo. banc 2003). "When the relevant facts are not in dispute, the issue of whether an accident arose out of and in the course of employment is a question of law

3

requiring *de novo* review." Miller v. Mo. Hwy. & Transp. Comm'n, 287 S.W.3d 671, 672 (Mo. banc 2009).

## Discussion

The SIF raises two related points on appeal, both arguing the Commission erred in concluding that Claimant's injury arose out of and in the course of his employment. First, the SIF argues that the Commission wrongly found compensation to exist in a factual situation the legislature had sought to exclude by its 2005 amendments to the Workers' Compensation Law. Second, the SIF argues that in any event, the Commission erred in concluding that Claimant was not equally exposed to the same risk of injury outside of his employment.

The rule applicable to both points on appeal is that Claimant's injury was compensable under the Workers' Compensation Law only if it arose out of and in the course of his employment. Section 287.120; Johme v. St. John's Mercy Healthcare, 366 S.W.3d 504, 509 (Mo. banc 2012). In 2005, the legislature made several amendments to the definitions contained in the Workers' Compensation Law. Among them, the legislature amended Section 287.020.3(2)'s definition of "arising out of and in the course of the employment" to read as follows:

> An injury shall be deemed to arise out of and in the course of the employment only if:
>
> (a) It is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury; and
>
> (b) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.

4

Along with this, the legislature changed its intent regarding construction of the Workers' Compensation Law from liberal to strict construction. Section 287.800; Miller, 287 S.W.3d at 673.

The Commission concluded that Claimant satisfied both of the statutory elements regarding his injury arising out of and in the course of employment, and this finding is the subject of both points on appeal.

Point I

The SIF first argues that the legislature intended with the 2005 amendments to eliminate an employee's recovery for injuries occurring while at lunch, even on the employer's premises. We disagree.

Another of the legislature's 2005 amendments was to add Section 287.020.10:

> In applying the provisions of this chapter, it is the intent of the legislature to reject and abrogate earlier case law interpretations on the meaning or definition of "accident", "occupational disease", "arising out of", and "in the course of the employment" to include, but not be limited to, holdings in: Bennet v. Columbia Health Care and Rehabilitation, 80 S.W.3d 524 (Mo. App. W.D. 2002); Kasl v. Bristol Care, Inc., 984 S.W.2d 852 (Mo. banc 1999); and Drewes v. TWA, 984 S.W.2d 512 (Mo. banc 1999) and all cases citing, interpreting, applying, or following those cases.

The SIF argues this provision expresses the legislature's intention to overrule the "personal comfort" doctrine that the Missouri Supreme Court discussed in Drewes v. TWA. There, an employee fell as she was carrying her lunch across the employer-owned break room. 984 S.W.2d at 514. Citing prior case law recognizing that "[a]ttending to one's personal comfort," including "seeking warmth and shelter, heeding a call of nature, satisfying thirst and hunger, washing, resting or sleeping, and preparing to begin or quit work," is incidental to employment, the Missouri Supreme Court found that the

5

circumstances otherwise satisfied the statute and that the employee could recover. Id. at 514-15 (quoting Bell v. Arthurs's Fashions, Inc., 858 S.W.2d 760, 763-64 (Mo. App. E.D. 1993), overruled on other grounds by Hampton v. Big Boy Steel Erection, 121 S.W.3d 220 (Mo. banc 2003)); see also Cox v. Tyson Foods, Inc., 920 S.W.2d 534, 537 (Mo. banc 1996) (personal comfort activities within reasonable limits of time and space benefit employee and thereby indirectly benefit employer).

Thus, the SIF argues, because Section 287.020.10 abrogated Drewes's interpretations of the meaning of "arising out of" and "in the course of the employment," Section 287.020.10 abrogated the personal comfort doctrine. There is no controlling case law on this issue. Strictly construing Section 287.020.10, we conclude the legislature did not intend to abrogate the personal comfort doctrine.

First, the plain language of this subsection does not mention a specific doctrine, but rather three cases. Of those three, only Drewes discussed the personal comfort doctrine. The plain language of Section 287.020.10 suggests that the three named cases have something in common that the legislature sought to abrogate, and as a matter of logic, we cannot conclude that every proposition put forth in Drewes was abrogated by Section 287.020.10. Rather, the various holdings in the three cases mentioned by Section 287.020.10 must be read in harmony with the rest of the statutory scheme.[2]

The Missouri Supreme Court has already determined what the legislature intended by enacting Section 287.020.10. The court interpreted this section as abrogating the three named cases and their progeny because they "permit[ted] recovery where the employee's

---

[2] For example, Drewes reaffirmed the principle that an employee cannot be compensated for injuries occurring during an unpaid lunch break away from the premises. 984 S.W.2d at 515. This principle remains in effect after 2005. Section 287.020.5 (employees may only recover for injuries sustained on premises owned or controlled by employer).

6

injury-causing act . . . would not have occurred if the employee were not at work."
Johme, 366 S.W.3d at 510 n.11 (quoting Miller, 287 S.W.3d at 674 n.2); see also State ex
rel. KCP & L Greater Mo. Operations Co. v. Cook, 353 S.W.3d 14, 38 (Mo. App. W.D.
2011) (noting 2005 amendments intended to abrogate cases that "had 'liberally'
interpreted the [Workers' Compensation Law] to find that workers' compensation
benefits were available for injuries and diseases that were caused by normal activities of
everyday life that coincidentally occurred at work or that had some connection to work
that the General Assembly considered more remote").

Additionally, in Johme, the injury fell under the personal comfort doctrine, but the
Missouri Supreme Court did not take this opportunity to interpret Section 287.020.10 as
abrogating the personal comfort doctrine. There, the employee was making coffee, when
she turned and twisted, causing her to fall and injure herself. 366 S.W.3d at 508 (noting
Commission applied personal comfort doctrine together with requirements of Section
287.020.3(2)). Rather than discussing the personal comfort doctrine, the Missouri
Supreme Court pointed to its discussion in Miller clarifying its analysis of "arising out of
or in the course of employment" as it relates to the risk of injury:

> Miller's focus was not on what the employee was doing when
> he popped his knee . . . but rather focused on whether the risk
> source of his injury—walking—was a risk to which he was
> exposed equally in his "normal nonemployment life."

Johme, 366 S.W.3d at 511. The court concluded that turning and twisting was a risk the
employee was equally exposed to in her normal nonemployment life, and thus her injury
was not covered by the Workers' Compensation Law. Id.

Thus, we focus on the particular *risk* of injury, rather than the employee's
particular *action* at the time of injury. Whether the action the employee is taking is

7

something he or she does outside of work is of less concern than whether the *risk of injury* from that action is equally present outside of work, or instead has some causal connection to the employee's work. See id. This is why even employees who are specifically performing work duties, as in Miller, may not ultimately recover under the new statutory scheme. Miller, 287 S.W.3d at 674 (though walking at work to perform a work duty, "nothing about the work caused the popping or the resulting medical condition"). We discuss more fully this principle's application to Claimant's case in Point II. For now, we mention it only to show that nothing in Section 287.020.10 or in cases discussing it since indicates that the legislature sought to hinge recovery solely on the action of the employee, thereby eliminating recovery for injuries sustained during lunch on the employer's premises.

In fact, the personal comfort doctrine is intertwined with a long line of cases holding that "injuries occurring *on the premises* during a regular lunch hour arise 'in the course' of employment, even though the interval is technically outside the regular hours of employment . . ., if such injury is traceable to dangers inherent in the employment environment." Daniels v. Krey Packing Co., 346 S.W.2d 78, 83 (Mo. 1961) (citing Larson's Workmen's Compensation Law, Vol. 1, §§ 21.21(a)-(b), pp. 298-301); see also Jones v. Bendix Corp., 407 S.W.2d 650, 652 (Mo. App. 1966) ("arising . . . in the course of his employment" requires only "that the task in which the employee was engaged, and as a result of which he was injured, was incident to the conditions of work . . . of which his employer might reasonably have knowledge or reasonably anticipate"; holding personal comfort qualifies). Thus, the personal comfort doctrine is linked to those injuries occurring on the employer's premises as defined by statute. Cf. Daniels, 346

8

S.W.2d at 83 (injuries sustained during trip away from employer's premises for lunch is not compensable).

Prior case law had expanded the availability of recovery through the "extended premises" doctrine, which held an employee could recover under certain conditions for injuries sustained going to and from work, regardless of whether the employer owned the property upon which the employee was injured. See Scholastic, Inc. v. Viley, 452 S.W.3d 680, 683 n.3 (Mo. App. W.D. 2014). The legislature then abrogated the extended premises doctrine in 2005 "to the extent it extend[ed] liability for accidents that occur on property not owned or controlled by the employer . . . ." Section 287.020.5. In this light, had the legislature wanted to similarly abrogate the personal comfort doctrine and restrict coverage to those injuries occurring only while an employee is performing specific work duties and not while performing incidental duties such as attending to his or her personal comfort at work, it could have done so explicitly. Under the plain language here, the legislature simply intended to restrict the premises upon which an employee could recover for injuries sustained while engaging in activities that have been found to arise out of or in the course of employment. We cannot conclude under the whole of the 2005 amendments that it was the legislature's intention to further restrict the compensable activities and to bar recovery *per se* anytime an employee is eating his or her lunch during an unpaid break on the employer's premises.

We agree with the Commission's reasoning that to do so, while at the same time allowing recovery under Section 287.020.5 for injuries sustained while an employee is injured on the premises but on the way to or from lunch is impractical and inconsistent with the statutory language and purpose. Point denied.

9

The SIF next argues that, notwithstanding the personal comfort doctrine, the Commission nevertheless erred in concluding that the risk of injury here was not one that Claimant was equally exposed to in his normal nonemployment life, under Section 287.020.10.3(2)(b). We disagree.

The same language in what is now Section 287.020.10.3(2)(b) was also present in the statute prior to 2005:

> [The injury must] not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.

Kasl, 984 S.W.2d at 854 (quoting Section 287.020.3(2)(d), RSMo. (Supp. 1993)). What was different before the 2005 amendments was the Missouri Supreme Court's interpretation of this language. Prior to 2005, the Missouri Supreme Court allowed recovery under this language for injuries resulting from essentially everyday activities, such as walking, simply because the particular moment at which the walking caused injury was while the employee was at work. See Drewes, 984 S.W.2d at 514 (finding that "[n]ecessarily, [the employee] was not 'equally exposed' outside of her employment to the risk of falling during her lunch break"); Kasl, 984 S,W,2d at 854 (employee's foot would not have fallen asleep had she not had to sit and wait for proper time to dispense medicine at work); see also Bennet, 80 S.W.3d at 531 (walking was integral to employee's job activities, thus knee "pops" at work were incidental to job duties).

However, since the 2005 amendments, as mentioned above, the Missouri Supreme Court has not focused on the specific task the employee was doing at the time of the accident, but rather on the risk source of injury and whether it was one the employee

10

was equally exposed to in his or her normal nonemployment life. Pope v. Gateway to West Harley Davidson, 404 S.W.3d 315, 319 (Mo. App. E.D. 2012) (discussing Johme and Miller). Thus, where the risk factor is one equally present in normal nonemployment life, such as walking, employees can no longer recover under the Workers' Compensation Law. For example, in Johme, the Supreme Court concluded that an employee who became injured when she turned while making coffee and fell off her shoe, twisting her ankle, could not recover because she was exposed to that same risk of turning and falling off of her shoes anywhere. 366 S.W.3d at 511. Likewise in Miller, the employee's knee popped while he was walking, and the court found that the risk factor of walking was equally present in his normal nonemployment life.[3] 287 S.W.3d at 674.

The standard for applying Section 287.020.3(2)(b) contained in both Miller and Johme requires a causal connection between Claimant's injury and his work activity. Johme, 366 S.W.3d at 510 (citing Miller, 287 S.W.3d at 674). This Court has summarized this new standard as requiring us to consider "whether [the employee] was injured *because* he [or she] was at work as opposed to becoming injured merely *while* he [or she] was at work." Pope, 404 S.W.3d at 320. Additionally, a simple two-part test developed by the Western District Court of Appeals to determine whether the injury is causally connected to the employee's work under the statute "first requires identification of the risk source of a claimant's injury, that is, identification of the activity that caused the injury, and then requires a comparison of that risk source or activity to normal nonemployment life." Gleason v. Turner, --- S.W.3d ---, No. WD77607 (Mo. App. W.D., Mar. 3, 2015).

---

[3] Had Drewes and Kasl still been good law, they would have been directly on point in Miller and Johme and would have brought about different outcomes. See Miller, 287 S.W.3d at 674.

11

Here, the SIF argues that the Commission erroneously determined that the risk source of Claimant's injury was the particular chair he sat in, rather than the general risk of sitting in a chair, to which employees are equally exposed in their nonemployment lives. We disagree. Under strict construction, "Section 287.020.3(2)(b)'s 'hazard or risk' cannot be identified so generally." Young v. Boone Elec. Cooperative, 462 S.W.3d 783, 790 (Mo. App. W.D. 2015).

While sitting in a chair is a generalized risk, whether that chair will collapse is dependent on the particular chair. Unlike the employee's knee popping in Miller, which had nothing to do with the surface he was walking on or the way he had to walk because of his employment; Claimant here did not suffer a general injury from the act of sitting itself, which could have occurred anywhere he sat down, but a particular injury because the chair he sat on collapsed. He was not exposed to that chair anywhere else but at work. There was no evidence presented that every chair Claimant sat on collapsed—in fact, the contrary was true. It was this particular chair that carried the risk of collapse, and this chair was owned by Employer and on Employer's premises when Claimant sat in it to have lunch.

The Commission correctly identified the risk source of Claimant's injury and correctly determined that Claimant was not equally exposed to it outside of work. Thus, Claimant's injury was causally connected to his work. See Johme, 366 S.W.3d at 510; Miller, 287 S.W.3d at 674. His injury occurred *because* he was at work, not simply *while* he was at work. See Pope, 404 S.W.3d at 320. Point denied.

12

## Conclusion

The 2005 amendments to the Workers' Compensation Law do not bar recovery for Claimant's injury based on what he was doing when he was injured—eating lunch during an unpaid lunch break on Employer's premises. Further, the Commission did not err in determining that the risk of injury to Claimant was not equally present outside of work, because the source of Claimant's injury was the collapse of the particular chair in which he sat. Thus, the Commission did not err in awarding benefits to Claimant. We affirm.

_____
Gary M. Gaertner, Jr., Judge

Philip M. Hess, P.J., concurs.
Angela T. Quigless, J., concurs.

13